IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHANNON NEWTON,

      Plaintiff,

      v.

BASYS PROCESSING, INC.,

      Defendant.

Case No. 16-2662-JAR-JPO

## MEMORANDUM AND ORDER

Plaintiff Shannon Newton brought this action against her former employer, Defendant Basys Processing, Inc., alleging discrimination on the basis of her age and sex, and for retaliatory discharge under Kansas law for availing herself of certain protections under the Older Workers Benefit Protection Act. This matter comes before the Court on Defendant Basys Processing's Partial Motion to Dismiss (Doc. 5) for failure to state a claim upon which relief may be granted, seeking dismissal of Count III for retaliatory discharge under Kansas law. This motion is fully briefed, and the Court is prepared to rule. As explained more fully below, the Court grants Defendant's motion to dismiss Count III.

**I.    Legal Standard**

To survive a motion to dismiss for failure to state a claim, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[1] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable

---

[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

likelihood of mustering factual support for *these* claims."[2] The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully,"[3] but requires more than "a sheer possibility."[4]

The plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*[5] seeks a middle ground between heightened fact pleading and "allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the Court stated 'will not do.'"[6] *Twombly* does not change other principles, such as that a court must accept all factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[7]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[8] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[9] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[10] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[2]*Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original).
[3]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[4]*Id.*
[5]550 U.S. 544 (2007).
[6]*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).
[7]*Id.* (citing *Twombly*, 550 U.S. at 556).
[8]*Iqbal*, 556 U.S. at 678.
[9]*Id.* at 678–79.
[10]*Id.* at 679

misconduct alleged."[11]

## II. Background

The following facts are alleged in the Complaint and taken as true for purposes of deciding this motion.

Plaintiff Shannon Newton began working for Defendant Basys Processing as a Manager of Operations on October 27, 2014. As Manager of Operations, Newton supervised the Customer Service Call Center. During the summer of 2015, the CEO of Basys hired Dan Johnson, and asked Newton to find Johnson a job within Basys. Newton found multiple jobs for Johnson, but the CEO stated that these jobs did not pay well enough. The Executive Director of Operations, Edwin Martin, announced that Johnson would be a management employee in the operations department on September 9, 2015. About one week later, the CEO and Martin told Newton she was not a good fit within the company and terminated her employment.

On September 17, 2015, Martin told Newton she would have six to ten weeks to transition to a different job so long as she worked with and trained her replacement. Martin also agreed to give Newton time off to look for another job. On September 21, 2015, Basys gave Newton a "Separation Agreement and Release." The agreement provided that Plaintiff had forty-five days to review it "pursuant to the Older Workers Benefit Protection Act of 1990."[12] This agreement stated that Newton would waive any and all claims against Basys, and that Basys' records would show she voluntarily resigned to take other employment. Newton refused to sign the agreement because she was not voluntarily resigning. Basys then offered Newton a second agreement. This time, the agreement stated that Newton was being terminated due to reorganization within her department. Newton claims that there was no reorganization and

---

[11]*Id.* at 678.

[12]Doc. 1 ¶ 36.

instead she was fired so the CEO could replace her with Johnson. Basys then began to pressure Newton to sign the separation agreement before the forty-five-day deadline. On October 7, 2014, Plaintiff sent an email asking Basys to stop pressuring her to sign the separation agreement. Newton was fired on October 14, 2014 and replaced by Johnson. Basys stated it fired Newton before the agreed-upon ten-week mark because she was not fulfilling their agreement. Basys offered Plaintiff a third Separation Agreement and Newton again refused to sign.

## III.  Discussion

Defendant's motion seeks to dismiss Count III, which is Plaintiff's claim for retaliatory discharge in violation of Kansas public policy.[13] Plaintiff alleges in the Complaint that she was retaliated against for taking advantage of protections contained in the Older Workers Benefit Protection Act ("OWBPA").[14] The OWBPA amends the ADEA and contains certain limitations on waivers of employee rights under the ADEA.[15] One of these limitations is that an individual must be given forty-five days to consider any agreement that contains a waiver of rights or claims under the ADEA.[16] Plaintiff argues that Defendant retaliated against her for exercising her right to wait forty-five days to consider the waiver in the separation agreement, in contravention of Kansas public policy.

Kansas is an at-will employment jurisdiction, meaning that absent an express or implied contractual agreement, an employer is free to terminate employment at will.[17] The Kansas

---

[13] Defendant's motion originally sought dismissal of Plaintiff's claim under the Age Discrimination in Employment Act ("ADEA") as well, but Plaintiff has since voluntarily dismissed that claim.

[14] 104 Stat. 983 § 201 (1990) (codified at 29 U.S.C. § 626(f)).

[15] *See Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 424–25 (1998).

[16] 29 U.S.C. § 626(f)(1)(F)(ii).

[17] *Flenker v. Willamette Indus., Inc.*, 967 P.2d 295, 298 (Kan. 1998) (citing *Johnston v. Farmers Alliance Mutual Ins. Co.*, 545 P.2d 312 (Kan. 1976)).

Supreme Court, however, has recognized an exception to the at-will employment doctrine for retaliatory discharge.[18] This common law exception, based on public policy concerns, seeks to discourage employers from firing employees who exercise their rights under labor-management regulation statutes.[19] The Kansas Supreme Court has recognized public policy exceptions to the employment-at-will doctrine in five instances: (1) filing a claim under the Kansas Workers Compensation act; (2) whistleblowing (3) filing a claim under the Federal Employers Liability Act ("FELA"); (4) exercising a public employee's First Amendment right to free speech on an issue of public concern; and (5) filing a wage claim under the Kansas Wage Payment Act.[20]

Defendant argues that because retaliation for exercising rights under the OWBPA has not been recognized by the Kansas Supreme Court as a basis for extending the Kansas retaliatory discharge doctrine, Plaintiff's claim must fail. Plaintiff responds that Kansas should extend the Kansas common law to cover the waiver requirements under the OWBPA. To determine whether a public policy exception to at-will employment exists, the Kansas Supreme Court has explained:

> We have stated that courts tasked with determining whether a public policy exists are faced with three situations: (1) The legislature has clearly declared the state's public policy; (2) the legislature enacted statutory provisions from which public policy may reasonably be implied, even though it is not directly declared; and (3) the legislature has neither made a clear statement of public policy nor can it be reasonably implied. We also have held that public policy must be clearly declared by the constitution, statutory enactments, or the courts, and it must be "so united and so definite and fixed that its existence is not subject to any substantial doubt." We also have acknowledged that while public

---

[18]*Id.*

[19]*Id.* (citing *Palmer v. Brown*, 752 P.2d 685 (Kan. 1988)); *Scott v. Topeka Performing Arts Ctr, Inc.*, 69 F. Supp. 2d 1325, 1328 (D. Kan. 1999) (quoting *Brown v. United Methodist Homes for the Aged*, 815 P.2d 72 (Kan. 1991)).

[20]*Campbell v. Husky Hogs, LLC*, 255 P.3d 1, 4, 7 (Kan. 2011).

policy may be determined by both the legislature and the courts, courts must respect legislative expressions when ascertaining whether a public policy exists.[21]

"Kansas courts look at whether a strongly held state public policy exists such that endorsing another exception to the at-will employment doctrine 'is necessary to protect' this policy 'from being undermined.'"[22]

The Court declines to find another exception to the at-will employment doctrine for complaining of OWBPA violations. Plaintiff points the Court to no clear statement of Kansas public policy on this issue. Plaintiff cites to the ADEA, OWBPA, and Supreme Court precedent to show that these statutes relate to public health, safety, and the general welfare.[23] To be sure, the ADEA and OWBPA protect the rights of older workers generally. The statement of findings and purpose section of the ADEA, for example, states "it is therefore the purpose of this chapter to . . . prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment."[24] However, neither the ADEA nor OWBPA is a clear statement of *Kansas* public policy, because they do not relate to the *Kansas* Constitution, statutes, or court decisions.[25] Although the Court acknowledges that a federal statute can provide the framework to support an employee's right to recovery under a retaliatory discharge theory, there should be a showing that the public policy underlying the federal statute is identical to Kansas public policy.[26] Here, Plaintiff makes no attempt to

---

[21]*Id.* at 5 (quoting *Hysten v. Burlington N. Santa Fe. Ry. Co.*, 108 P.3d 437, 440 (Kan. 2004)) (citations omitted).

[22]*Goolsby v. Mgmt. & Training Corp.*, No. 14-4019-SAC, 2014 WL 2988748, at *5 (D. Kan. July 2, 2014).

[23]*See Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 426 (1998) ("The policy of the OWBPA is likewise clear from its title: It is designed to protect the rights and benefits of older workers.").

[24]29 U.S.C. § 621(b).

[25]*See Campbell*, 255 P.3d at 5.

[26]*Hysten*, 108 P.3d at 441; *see also Flenker v. Williamette Industries, Inc.*, 967 P.2d 295, 300–03 (Kan. 1998).

6

demonstrate a clear Kansas public policy toward protecting older workers from waiving their ADEA rights.

Moreover, Plaintiff attempts to define the public policy at issue under the OWBPA too broadly, and importantly fails to demonstrate that recognizing this public policy is necessary to protect it from being undermined. Plaintiff does not claim in Count III that she was retaliated against because of her age—a claim that would be governed by the ADEA. Instead, she claims that she was retaliated against for availing herself of rights protected by the OWBPA; specifically, the right to review the proposed separation agreement for forty-five days before signing it. Assuming Kansas public policy mirrors federal public policy on this issue, the OWBPA does not permit its waiver provisions to be used by plaintiffs as a sword.[27] "[T]he OWBPA simply determines whether an employee has, as a matter of law, waived the right to bring a separate and distinct ADEA claim. The OWBPA does not, by itself, determine in the first instance whether age discrimination has occurred."[28] Therefore, although the OWBPA furthers a public policy of protecting older workers by "ensur[ing] that older workers are not coerced or manipulated into waiving their rights to seek legal relief under the ADEA,"[29] it does not follow that a Kansas plaintiff may do an end-run around the lack of a private right of action under the OWBPA by asserting a public policy exception under Kansas law. As several courts have explained, the waiver provisions further the statute's policy of ensuring older workers are not coerced into waiving their rights under the ADEA.[30] If a waiver provision violates the OWBPA, then an employee may bring an ADEA claim and the employer may not invoke the

---

[27]*Whitehead v. Okla. Gas & Elec. Co.*, 187 F.3d 1184, 1191 (10th Cir. 1999).

[28]*Id.* at 1192.

[29]*Id.* (quoting S. Rep. No. 101-263, at 5 (1990)).

[30]*See, e.g.*, *id.*; *see also Oubre*, 522 U.S. at 426–27.

waiver as an affirmative defense.[31]  Plaintiff has not shown that this remedy is insufficient to protect the public policy furthered by the OWBPA.  Given Plaintiff's failure to make the requisite showing of a clear Kansas public policy on this issue, and that extending a public policy exception to retaliation for exercising rights under the OWBPA is necessary to protect the public policy at issue, the Court declines to extend Kansas law beyond the five exceptions recognized by the Kansas Supreme Court.[32]

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Basys Processing's Partial Motion to Dismiss (Doc. 5) is **granted**.  Count III is hereby dismissed.

**IT IS SO ORDERED.**

Dated: March 13, 2017

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[31] *Whitehead*, 187 F.3d at 1192.

[32] *Accord Hand v. Walnut Valley Sailing Club*, No. 6:10-cv-01296-SAC-KGS, 2011 WL 1113730, at *3 (D. Kan. Mar. 24, 2011); *Toploski v. Chris Leef Gen. Agency, Inc.*, No. 11-2495-JTM, 2012 WL 984278, at *5 (D. Kan. Mar. 22, 2012).